UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AMANDA MAMIE DAMARIO

     Plaintiff,

v.                                                                    Case No. 3:21cv935-TKW-HTC

JOSE A. GIRAUD, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Amanda Damario initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983 based on her July 15, 2021 arrest and subsequent charges, which are currently pending in state court. ECF Doc. 1. Plaintiff also filed a motion to proceed *in forma pauperis* (ECF Doc. 2) and a motion to enter video evidence, which relates to her arrest (ECF Doc. 3).

The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). Although neither Plaintiff's complaint nor indigency motion are on this Court's forms, for judicial efficiency, the Court nonetheless screened the substance of the complaint. Upon screening the complaint, and for the reasons discussed below, the undersigned recommends this action be dismissed *sua sponte*.

Namely, as discussed below, Plaintiff's claims arise out of a pending state criminal case and, thus, this Court should abstain from exercising jurisdiction pursuant to the *Younger* doctrine[1].   Also, even if the Court were to exercise jurisdiction, the Defendants are either immune or not subject to suit under § 1983.

## I.    BACKGROUND

On August 2, 2021, Plaintiff initiated this action against (1) Deputy Moye, (2) Sergeant Fuszner, (3) Prosecutor Alderman, and (4) Judge Giraud based on Plaintiff's July 15, 2021 arrest, which resulted in Plaintiff being charged with one count of failure to register a motor vehicle and one count of driving with an expired license over six months.   ECF Doc. 1; *see also* 21002199CTMXAX (Santa Rosa County).[2] Defendants are sued in their official capacity only.  *Id*. at 2-3.  As set forth below, the crux of Plaintiff's complaint deals with each Defendant's involvement either in the arrest or the resulting state proceeding.

Plaintiff alleges as follows:  On July 15, 2021, at approximately 12:00 p.m., Plaintiff "requested help of" the Santa Rosa County Sheriff's Office "to retrieve [her] camper that had been stolen." *Id.* at 4.  Plaintiff had located the stolen camper

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

[2] A federal court may properly take judicial notice of state court dockets.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir.), *cert. denied sub nom. Paez v. Inch*, 141 S. Ct. 309 (2020); Fed. R. Evid. 201(b)(2).  Thus, as an initial matter, the undersigned will take judicial notice of Plaintiff's state court records, available at the following URL:
https://www.civitekflorida.com/ocrs/app/caseinformation.xhtml.

and "the woman living it," when Plaintiff called the officers. *Id.* "The woman has psychological problems and carries a gun." *Id.*

Deputy Moye was the first to respond to the scene, followed by Greenberg, who is not a named defendant. ECF Doc. 1 at 4. Moye approached the woman, Ms. Taylor, and began questioning her about the camper. Defendant Sgt. Fuszner then arrived and, as Plaintiff was giving him evidence to show the property was hers, Sgt. Fuzner stated that Taylor had already confessed it was Plaintiff's property. *Id.* Plaintiff then asked the officers if she could have Taylor charged, to which Sergeant Fuszner responded that "[is] a civil matter." *Id.* Plaintiff "also explained to Moye and Greenberg the events along with . . . all of the proof [she] filed at the Clerk's office including the 14 requests and grievances that were made while incarcerated in SRCSO in 2020." *Id.*

"When the event was over," an issue arose regarding Plaintiff's driver's license. *Id.* at 4; 6. Plaintiff "quickly showed them [her] documents as a private citizen and that [her] commercial Drivers license was surrendered." *Id.* at 6. Plaintiff is "not for hire and [can] travel freely." *Id.* Deputy Moye and Sergeant Fuszner stated that "if they caught [Plaintiff's] private vehicle on the road, they could arrest [her]." *Id.* So, Plaintiff "waited for them to leave." *Id.* Plaintiff claims Deputy Moye "drove with his eye in his rearview mirror" even though "he was well

ahead of [Plaintiff] and [her] friend . . . who acted as a witness to the previous incident." *Id.*

Eventually, Plaintiff "came to Hickory Hammock Rd. . . . [and] [a]s [she] took the right and maintained the vehicle on the highway," Moye's unit passed in the opposite lane." *Id.* at 6. Plaintiff then "out of the corner of [her] eye," saw Deputy Moye "make a hasty u turn." *Id.* Plaintiff "immediately parked the vehicle at the church located on Hickory Hammock Rd." made "a call to arrange a ride," and waited for Deputy Moye to arrive at her window. *Id.*

Deputy Moye asked, "what did I tell you about driving?" *Id.* Plaintiff informed Deputy Moye that she "was not driving" and "reached for [her] documents again to show him." *Id.* Sergeant Fuszner "also arrive[d]" and Plaintiff told the officer "no crime has been committed." *Id.* She stated "I TRAVEL and I have that right. I no longer operate in the commercial realm." *Id.* "At that point, they did not care. 2 to 3 other officers were called". *Id.*

At some point, Plaintiff's "ride showed up." *Id.* As Plaintiff was "moving [her] purse and support animal," which she "had just received less than an hour before, to the vehicle" she was "surrounded by these 4 or 5 men [who] handcuffed [her] and place[d] her in Moye's unit." *Id.* Plaintiff claims Deputy Moye and Sergeant Fuszner "conspired to entrap" her. *Id.* at 5. She "charge[s]" Deputy Moye with "reckless operation and public endangerment."

After the arrest, Plaintiff was transported to "Santa Rosa County Sheriff's Office Jail for booking on July 15th, 2021 at approximately 1:30 pm" and "placed in isolation." *Id.* Plaintiff "appeared before Judge Jose Giraud on July 16th, 2021 and he agreed with the arrest report and created an increased bond when [she] started to place statements on the record and challenged the constitutionality of the proceeding." *Id.* Prosecutor Mark Alderman, with whom Plaintiff had a previous negative experience was present and also agreed with the proceeding. *Id.* At some point during the hearing, Plaintiff was "assaulted by an officer Robersson and removed from the podium and dragged into the hall aggressively and forcefully...." *Id.* at 5. Plaintiff also claims Robersson (who is not a defendant in this action) "drop kicked" her and she has opened a case against Officer Robersson "separately with a private investigative agency." *Id.*

Plaintiff was "placed back in insolation until roughly 10pm that night." *Id.* While in isolation, Plaintiff was "unable to reach anyone," "and unbeknownst to [Plaintiff] [her] family bonded [her] out" after spending "32 hours in this facility." *Id.* "Judge Giraud had made [Plaintiff's] next court date [for] August 25th prior to [her] release." *Id.* Plaintiff claims she "would not have paid the bond and fought the case if it had been up to" her because she had a "previous experience with this facility and was treated with severe cruel and unusual punishment." *Id.*

Plaintiff seeks monetary relief of "$25,000.00 per hour per incident," for "every document that bears [her] name and identifying numbers such as the surrendered license number and Social Security number." ECF Doc. 1 at 8. She also seeks $25,000 per hour per incident to include a $5,000,000.00 penalty for each officer of the law that does not uphold their Constitutional Oath." *Id.* Finally, she seeks $25,000,000.00 in damages "for Deputy Moye, Sgt. Fuzner, Jose Giraud, Mark Alderman and Deputy Robersson", although as stated above Robersson is not a named defendant.

## II.    LEGAL STANDARD

District courts have "'unquestionable' authority to control their own dockets. This authority includes "broad discretion in deciding how best to manage the cases before them." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citations omitted). Thus, a district court may *sua sponte* dismiss a *pro se* litigant's complaint where the plaintiff cannot cure the defects by amending his complaint, or an amendment would be futile. *See Horn v. Estate of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020); *Woldeab v. DeKalb Cnty Bd. of Ed.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

Indeed, while a court should read a *pro se* complaint liberally, "early evaluation of the potential merits of a pro se litigant's claim is very important because initial screening by the court can eliminate patently frivolous actions." *See,*

*e.g.*, *Gonzalez v. Citicorp Credit Srvcs., Inc.*, 2015 WL 13776794 (S.D. Fla. May 18, 2015), *adopting report and recommendation*, 2015 WL 13776795 (June 22, 2015). Moreover, where a plaintiff seeks to proceed *in forma pauperis*, such as in this case, the Court must also "dismiss the case at any time if the court determines that … (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## III.    THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION UNDER *YOUNGER V. HARRIS*, 401 U.S. 37 (1971)

Under the *Younger* doctrine, a federal court should abstain from exercising jurisdiction over a matter that is pending in state court. *See Younger v. Harris*, 401 U.S. 37 (1971). As the Eleventh Circuit has explained, "[f]ederal courts [should] abstain from hearing cases that would interfere with state proceedings where those proceedings are ongoing, they implicate important state interests, and there is an adequate opportunity to raise constitutional challenges in those proceedings." *Daniels v. Geraldi*, 578 F. App'x 811, 811 (11th Cir. 2014) (citing *Younger*, 401 U.S. at 37).

There are three (3) factors for a court to consider in determining whether abstention is required. "[F]irst, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise

constitutional challenges." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *see also Old Republic Union Ins. Co. v. Tillis Trucking Co.,* 124 F.3d 1258, 1261 (11th Cir. 1997). Each of those factors are met here.

As to the first element, the allegations in Plaintiff's complaint clearly arise from an ongoing state criminal proceeding. Plaintiff admits she was arrested, charged, detained, and appeared before a judge regarding those charges, and that she is currently out on bond for those charges. ECF Doc. 1 at 4-6. A review of the Santa Rosa County online docket confirms Plaintiff's case is "open" with an "EVENT SCHEDULED ON 9/3/2021." *See* 21002199CTMXAX.

The second *Middlesex* factor—whether the state proceedings implicate important state interest—is also met. Plaintiff was charged with two violations of Florida law: failure to register a motor vehicle and driving on an expired driver's license for more than six months. *See id.* It goes without saying that States have an interest in prosecuting their own laws. *See Juidice v. Vail*, 430 U.S. 327, 335 (1977) (recognizing important state "interest in the enforcement of its criminal laws"). Additionally, the United States Supreme Court has expressly held that the "[s]uspension of issued licenses . . . involves state action [which] adjudicates important interests." *Bell v. Burson*, 402 U.S. 535, 539 (1971).

The third Middlesex factor is also met because there is no procedural bar to Plaintiff raising the instant claims in her state court case. An "[a]dequate opportunity to raise constitutional challenges exists so long as state procedural law does not bar the party from raising the constitutional claim." *Daniels v. Geraldi*, 578 F. App'x 811, 811 (11th Cir. 2014). "[I]nterference in pending proceedings is inappropriate unless state law clearly bars the interposition of . . . [federal] constitutional claims." *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988) (internal quotation marks omitted) (citing *Middlesex*, 457 U.S. at 432).

As set forth in above, Plaintiff was arraigned on her pending charges and has an upcoming hearing scheduled for September 3, 2021 at 8:30 a.m. before Judge Giraud. Plaintiff will have the opportunity to challenge her arrest and charges in those state court proceedings, including raising any claims of entrapment. Indeed, as Plaintiff's "motion for entry of evidence" indicates, Plaintiff has already engaged in that opportunity and has obtained audio and video footage from the Defendants depicting her arrest. Thus, this Court should abstain from exercising jurisdiction over Plaintiff's claims.[3]

---

[3] Also, to the extent Plaintiff seeks recovery for any alleged excessive use of force by Robersson, she has not named her as a defendant. Moreover, because that claim does not arise out of the same transaction or occurrence as her arrest or Deputy Moye's alleged entrapment, and do not involve any common question of law or fact, she cannot join that claim in this action. *See* Fed. R. Civ. P. 20(a)(2).

## IV.   IMMUNITY

Even assuming this Court could exercise jurisdiction over Plaintiff's claims, Plaintiff's claims would still be subject to dismissal as she seeks relief against defendants who are immune from liability under section 1983 or are not subject to suit.

First, as stated above, Plaintiff's claims against Judge Giraud arise out of his judicial duties.  Namely, Plaintiff takes issue with the Judge's "agreement" with the arrest report and his decision to increase Plaintiff's bond.  This claim, however, cannot proceed because "[j]udges are entitled to absolute immunity from damages for those acts taken while they are acting in their judicial capacity . . . . This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir.2005) (quotation marks omitted).

Similarly, Plaintiff's claims against Prosecutor Alderman (or any prosecutor prosecuting Plaintiff's action)[4] is barred.  "A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).  Such immunity, "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State." *Id.*

---

[4] Based on the State court docket, the prosecutor in Plaintiff's case was not Alderman.

(quotation marks omitted).  While Plaintiff does not allege what she contends the Prosecutor did wrong, other than that he was "present," any conduct he took in his roles, duties and function as a prosecutor would be barred.

Finally, Plaintiff sues the sheriff's deputies only in their official capacities.  A suit against a person in their official capacity is to be treated as a suit against the entity.  *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).  That entity, here, is the Santa Rosa County Sheriff's Office.  However, under Florida law, Sheriff's Offices are not entities which are subject to suit.  *See Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 700–01 (11th Cir. 2013).  Also, even if Plaintiff were permitted to amend her complaint to allege a claim against the Sheriff in his official capacity,[5] such a claim would fail.  To impose § 1983 liability on a sheriff in his or her official capacity, a plaintiff must show that an official policy or custom of the Sheriff was the "moving force" behind the alleged constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).  Plaintiff's allegations involve individual actions taken by the deputies and do not involve any policy, custom or other involvement by the Sheriff.  Therefore, an official capacity claim against the Sheriff would fail, and an amendment to allow such a claim would be futile.

---

[5]  *See, e.g.*, *Levine v. Sarasota Cty. Sheriff's Off.*, 2006 WL 2037151, at *2 (M.D. Fla. July 18, 2006) (In an official capacity suit, "Florida law provides that the proper party to be sued for the alleged wrongful acts of sheriff's deputies is the sheriff, the constitutional officer. See Fla. Stat. § 768.28(9).  Accordingly, the 'Sarasota County Sheriff's Office' is dismissed from this action as an improper party.").

## V.    CONCLUSION

Although the Court should generally not dismiss a case without allowing the Plaintiff an opportunity to amend, because this dismissal is being recommended based on jurisdictional grounds and defendants are either immune or not subject to suit, the undersigned finds leave to amend would be futile. *See Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("district courts need not permit amendment where it would be futile to do so"). Moreover, because this is a recommendation for dismissal, Plaintiff will be provided an opportunity to file an objection to this report and recommendation prior to dismissal. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotation marks omitted) (before dismissing an action *sua sponte*, the court must ensure that it employs a procedure that is fair, which generally includes "provid[ing] the plaintiff with notice of its intent to dismiss or an opportunity to respond"); *see also, Shivers v. Int'l Bhd. of Elec. Workers Local Union*, 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment).

It is RESPECTFULLY RECOMMENDED:

1.    This action be dismissed *sua sponte* for lack of jurisdiction or, alternatively, failure to state a claim.

2.    All pending motions be terminated.

3.    The clerk be directed to close the case.

DONE AND ORDERED this 23rd day of August, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.